1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | CASE NO. CR19-0194JLR |
|---|---|
| Plaintiff, | ORDER DENYING THIRD PARTY MOTION TO QUASH SUBPOENA |
| v. | |
| ANTHONY EDWIN PAUL, et al., | |
| Defendants. | |

Before the court is the Washington State Department of Revenue's ("DOR") third-party motion to quash subpoena. (Mot (Dkt. # 69).) DOR seeks to quash the subpoena *duces tecum* served on it by Defendant Anthony Edwin Paul in which Mr. Paul seeks information relating to Washington state taxes paid by non-party TK Mac Enterprises ("TK Mac"). (*See* Fitzpatrick Decl. (Dkt. # 69-1) ¶ 4 & Ex. 1 ("Subpoena").) Mr. Paul opposes DOR's motion, and the Government has not responded to the motion. (Resp. (Dkt. # 71); *see generally* Dkt.) Having considered DOR's motion, Mr. Paul's

//

ORDER - 1

response, the relevant portions of the record, and the applicable law, the court DENIES DOR's motion to quash.

## I. BACKGROUND

Mr. Paul is the president of multiple smoke shops that are located on the Puyallup Indian Reservation and licensed by the Puyallup Tribe. (Mot. to Expedite Subpoena (Dkt. # 51) at 1; Smith Mot. to Expedite Decl. (Dkt. # 52) ¶ 2.) Mr. Paul's co-defendant[1] Theodore Kai Silva was a manager of one of the smoke shops. (Smith Mot. to Expedite Decl. ¶ 2.) TK Mac is a non-Indian tobacco wholesaler and retailer that sold cigarettes and smokeless tobacco products to Mr. Paul's smoke shops. (Mot. to Expedite Subpoena at 2.) The Government alleges in a 16-count indictment that Mr. Paul and Mr. Silver agreed with TK Mac's owners, Tae Young Kim and Hyung Il Kwon, to commit wire fraud and money laundering and to traffic in contraband smokeless tobacco products between 2012 and 2017. (*See generally* Indictment (Dkt. # 1).) The indictment alleges that a primary goal of the conspiracy was to aid TK Mac in evading taxes imposed on tobacco products by DOR. (*See, e.g.*, Indictment at ¶ 2.)

Neither TK Mac nor its owners are parties in this criminal case. (*See generally* Indictment.) Mr. Paul, however, anticipates that Mr. Kim and Mr. Kwon, who are cooperating witnesses and who have executed plea agreements admitting to certain tax-related crimes, will serve as Government witnesses at trial. (Smith Mot. to Expedite

---

[1] Mr. Silva entered into a plea agreement with the Government on September 22, 2020. (*See generally* Plea Agreement (Dkt. # 66).) Mr. Silva, therefore, is not a party to the subpoena at issue in this motion. (*See* Resp. at 1 n.1.)

Decl. ¶ 14.) Mr. Paul states that he is aware that DOR conducted audits of TK Mac before he and Mr. Silva allegedly joined TK Mac's conspiracy, and that DOR found in those audits that TK Mac had overstated tax credits for certain tobacco products. (Mot. to Expedite at 4-5; Smith Mot. to Expedite Decl. ¶ 5 & Ex. C.) Mr. Paul, therefore, argues that tax information relating to TK Mac is necessary for his trial preparation because it is relevant to the indictment, may have probative or exculpatory value, and may be useful for cross examination or impeachment of Mr. Kim, Mr. Kwong, and possible DOR witnesses. (*See* Mot. to Expedite at 2-3; Smith Mot. to Expedite Decl. ¶¶ 4-13.) Although Mr. Paul and Mr. Silva sought documents in discovery relating to DOR's audits or reviews of TK Mac's excise tax returns for the period alleged in the indictment, the Government was not in possession of such documents and therefore did not provide those documents to Mr. Paul and Mr. Silva. (Smith Mot. to Expedite Decl. ¶ 11.)

On September 10, 2020, Mr. Paul and Mr. Silva moved the court pursuant to Federal Rule of Criminal Procedure 17(c) for issuance of a subpoena *duces tecum* to DOR for pre-trial production of excise tax information relating to TK Mac. (Mot. to Expedite Subpoena.) The subpoena requests the following categories of documents relating to TK Mac and its owners from January 1, 2008 through December 31, 2017:

1. All Tobacco Products Tax Credit worksheets submitted by TK MAC;

2. All Schedule C2 (Smokeless Tobacco) forms submitted by TK MAC;

3. All Proposed or Final Audit Adjustment documents issued to TK MAC, including correspondence and worksheets;

1      4. Schedule C3 (Roll-Your-Own) tobacco forms submitted by TK MAC;

2      5. Combined Excise Tax Returns ("CETR") filed by TK MAC;

3      6. Auditor's Details of Differences and Instructions to Taxpayer issued to TK MAC;

    7. Correspondence to or from TK MAC or its representatives and DOR;

    8. Correspondence between the US Attorney's Office and/or the Internal Revenue Service, on the one hand, and DOR, on the other, regarding TK MAC for anytime period through present day;

    9. All documents pertaining to DOR's reviews the Other Tobacco Product ("OTP") tax credits taken by TK MAC on CETRs.

(*See* Subpoena at Appendix A.)  The Government did not oppose the motion.  (*See generally* Dkt.)  On September 24, 2020, the court granted the motion to expedite issuance of the subpoena.  (9/24/2020 Order (Dkt. # 56).)  Mr. Paul served the subpoena on DOR on September 30, 2020.  (*See* Subpoena at 1.)

Rather than comply with the subpoena, DOR filed the instant motion to quash on October 5, 2020.  (*See generally* Mot.)  DOR objects to the subpoena solely on the ground that, in its view, compliance with the subpoena would require it to violate Washington's tax confidentiality statute, RCW 82.32.330.  (*Id.*)

## II.  ANALYSIS

In considering a motion to quash a subpoena issued pursuant to Federal Rule of Criminal Procedure 17(c), the court "initially must determine whether the subpoena complies with Rule 17(c), and if so, whether the materials identified therein are privileged."  *United States v. Reyes,* 239 F.R.D. 591, 597 (N.D. Cal. 2006).  Here, DOR does not object to the subpoena for failure to comply with Rule 17(c), nor does it object

1  to the scope of the subpoena.  (*See* Mot. at 3 (indicating willingness to comply with the
2  subpoena separate from concerns about the confidentiality of the tax information under
3  state law).)  Instead, DOR contends that the court should quash the subpoena because it
4  improperly seeks tax information that, it argues, is privileged pursuant to Washington's
5  tax confidentiality statute.  (*Id.*)  Thus, the sole question before the court is whether the
6  state tax information Mr. Paul seeks is protected by privilege.

7        Assertions of privilege in a federal criminal case are governed by Federal Rule of
8  Evidence 501.  That rule provides, in relevant part, that "[t]he common law—as
9  interpreted by United States courts in the light of reason and experience—governs a
10 claim of privilege" except if a federal rule, a federal statute, or a constitutional provision
11 states otherwise.  Fed. R. Evid. 501.  Thus, the rule allows federal courts to develop rules
12 of privilege on a case-by-case basis.  *Univ. of Pennsylvania v. Equal Employment*
13 *Opportunity Commission,* 493 U.S. 182, 189 (1990).  Evidentiary privileges, however,
14 are strongly disfavored in federal practice and must be narrowly drawn because they
15 "contravene the fundamental principle that 'the public . . . has a right to every man's
16 evidence.'"  *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).  Mindful of
17 this principle, courts will "not create and apply an evidentiary privilege unless it
18 'promotes sufficiently important interests to outweigh the need for probative evidence.'"
19 *Id.* (quoting *Trammel*, 445 U.S. at 51, and declining to recognize a federal privilege
20 prohibiting disclosure of academic peer review materials).  Here, therefore, the court
21 must decide whether a privilege against disclosure of state tax information promotes
22

1  sufficiently important interests to outweigh Mr. Paul's need for the evidence to prepare
2  his defense.  *See Trammel*, 445 U.S. at 50.

3  DOR asserts that this court should recognize a federal evidentiary privilege based
4  on RCW 83.32.330, Washington's tax confidentiality statute, which provides that
5  "[r]eturns and tax information are confidential and privileged, and except as authorized
6  by this section, neither the department of revenue nor any other person may disclose any
7  return or tax information."  RCW 83.32.330(2).  The definition of "tax information" is
8  broad, and the parties do not dispute that it encompasses the documents at issue here,
9  which DOR obtained as a result of its administration of Washington's excise tax statutes.
10 (*See* Mot. at 4 (citing RCW 83.32.330(1)(c)).  The statute outlines a series of exceptions
11 to the general rule that DOR cannot disclose tax information.  *See* RCW 83.32.330(3);
12 Neither party contends that those exceptions apply here.  (*See* Mot. at 5-6; *see generally*
13 Resp.)

14 DOR argues that the court's balancing of the interests should weigh in favor of
15 recognizing a privilege based on RCW 83.32.330 because its confidentiality provisions
16 further two important governmental objectives:  the protection of the "privacy interests of
17 persons who are required by law to disclose personal information relating to their
18 finances" and the encouragement of "full and accurate disclosure by persons subject to
19 the mandatory tax reporting requirement."  (Mot. at 5.)  Mr. Paul, however, contends that
20 the balance tips in his favor because a finding that the tax records are privileged would
21 violate his constitutional rights to due process and confrontation.  (Resp. at 7-8.)

22

The court agrees with Mr. Paul.  The Due Process Clause entitles criminal defendants to information that is material or favorable to the defense.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The Sixth Amendment guarantees the right of an accused in a criminal prosecution to cross-examine the witnesses who testify against him. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  Although DOR's stated interests in taxpayer privacy and compliance are undoubtedly important, the court finds that they are less weighty than the constitutional rights of a criminal defendant to obtain evidence which bears upon the determination of guilt or punishment and to cross-examine the Government's witnesses.  *See United States v. Crabbe*, Criminal Action No. 06-cr-00294-PSF, 2007 WL 776322, at *3 (D. Colo. Mar. 9, 2007) (observing that "[a] defendant's Sixth Amendment right to confrontation may well overcome any state asserted interest in otherwise maintaining the confidentiality of investigatory or other files" and declining to recognize a privilege protecting otherwise confidential complaints made to a state accountancy board).  The court therefore declines to recognize a federal privilege based on Washington's tax confidentiality statute.

The court finds support for this conclusion in a recent civil case in which the court refused to recognize a federal evidentiary privilege based on RCW 83.32.330.  In *Tulalip Tribes v. State of Washington*, No. C15-0940BJR, 2016 WL 3906898 (W.D. Wash. Jul. 19, 2016), the Tribes contended that certain taxes the state and county imposed on business activities in Quil Ceda Village, a federally recognized municipality on the Tulalip Reservation, were unlawful.  *Id.* at *1.  The Tribes moved to compel Washington State and DOR to answer interrogatories and requests for production relating to the state

and local taxes. *Id.* The state defendants objected to the Tribes' discovery requests, arguing that the information was protected by RCW 83.32.330. *Id.* at *4. The court determined that Washington's interests in maintaining the confidentiality of the tax records—which, as in this case, included the privacy interests of the taxpayers and the need to encourage full and accurate disclosure by the taxpayers—were not sufficiently important to outweigh the Tribes' need for the information to support their claims. *Id.* The court is persuaded that Mr. Paul's constitutional rights in this criminal case bear even more weight than the Tribes' need for tax information in a civil case.

DOR argues that the court should follow the First Circuit Court of Appeals's holding in *In re Hampers*, 651 F.2d 19 (1st Cir. 1981), and recognize a qualified federal privilege by analogy to the federal tax confidentiality statute, 26 U.S.C. § 6103. (Mot. at 8-10.) The court declines to do so. Section 6103 places restrictions on the disclosure of federal tax information to federal officers and employees for use in non-tax criminal investigations. 26 U.S.C. § 6103(i)(1). *In re Hampers* and the other cases upon which DOR relies involved subpoenas issued in grand jury investigations that fit squarely within this provision. (*See* Mot. at 9-10 (citing *In re Hampers*, 651 F.2d at 20, *In re Grand Jury Empanelled January 21, 1981*, 535; F. Supp. 537 (D.N.J. 1982); *In re Cruz*, 561 F. Supp. 1042 (D. Conn. 1983); *In re Grand Jury Subpoena*, 118 F.R.D. 558 (D. Vt. 1987); *In re Grand Jury Subpoena Dated November 14, 1989*, 728 F. Supp. 368, 370 (W.D. Penn. 1990); *In re Grand Jury Subpoena*, 485 F. Supp. 2d 709 (E.D. Va. 2007).) Unlike the grand juries in these cases, Mr. Paul does not seek tax information for the purpose of advancing a criminal investigation. *See Tulalip Tribes*, 2016 WL 3906896, at *5

(recognizing that cases involving grand jury investigations did not apply outside of that context). To the contrary, Mr. Paul seeks the information to aid in his defense. The parties' interests in the grand jury cases, therefore, were very different from the ones at issue here, which implicate Mr. Paul's constitutional rights to due process and confrontation.

Finally, DOR is concerned that compliance with Mr. Paul's subpoena could subject its employees to sanctions. RCW 82.32.330(6) provides that if an officer or employee of the state unlawfully discloses confidential tax information, that person is guilty of a misdemeanor, must forfeit his or her office or employment, and cannot hold any public office or employment in Washington for a period of two years thereafter. It is well recognized, however, that when a federal court declines to recognize a state's statutory privilege as a part of federal common law, the state cannot then punish its employees for complying with a federal subpoena. (Resp. at 3); *see, e.g., In re Hampers*, 651 F.2d at 21 ("When compliance with a federal subpoena compelled by the Supremacy Clause is at the same time the only act which could be a violation of state law, there remains no room for state law sanction.").

### III.   CONCLUSION

For the foregoing reasons, the court DENIES DOR's motion to quash Mr. Paul's subpoena (Dkt. # 69). DOR shall comply with the subpoena served upon it on September 30, 2020, by no later than ten court days from entry of this order.

//

//

Dated this 6th day of November, 2020.

JAMES L. ROBART
United States District Judge