Judge James L. Robart

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR19-194-01JLR |
|---|---|
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| ANTHONY EDWIN PAUL, | |
| Defendant. | |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and James D. Oesterle and Jonas Lerman, Assistant United States Attorneys for this District, Defendant Anthony Edwin Paul, and Defendant's attorney, David H. Smith, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.     **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charge contained in the Indictment:

a.     Conspiracy to Commit Money Laundering, as charged in Count 13, in violation of Title 18, United States Code, Section 1956(h).

Plea Agreement – 1
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2.     **Elements of the Offense.** The elements of the offense to which Defendant is pleading guilty, Conspiracy to Commit Money Laundering, as charged in Count 13, are as follows:

*First*, beginning on or about January 1, 2013, and continuing until on or about April 26, 2017, there was an agreement between two or more persons to launder money; and

*Second*, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The specific elements of the offense of money laundering are as follows:

*First*, the defendant or one or more of the defendant's co-conspirators conducted or intended to conduct a financial transaction involving property that represented the proceeds of wire fraud, or of the sale of contraband smokeless tobacco;

*Second*, the defendant or one or more of the defendant's co-conspirators knew that the property represented the proceeds of some form of unlawful activity; and

*Third*, the defendant or one or more of the defendant's co-conspirators knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds, or to avoid a transaction reporting requirement under state or federal law.

3.     **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty, Conspiracy to Commit Money Laundering as charged in Count 13, are as follows: a term of imprisonment of not more than twenty years, a fine of not more than $500,000 or twice the amount involved in the transactions, whichever is greater, a period of supervision following release from

Plea Agreement – 2
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

prison of up to 3 years, and a mandatory special assessment of $100. If a probationary sentence is imposed, the probation period can be for up to 5 years.

Defendant understands that supervised release is a period following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4.      **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

Plea Agreement – 3
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

immigration consequences that Defendant's guilty plea may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

    a.    The right to plead not guilty and to persist in a plea of not guilty;

    b.    The right to a speedy and public trial before a jury of Defendant's peers;

    c.    The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

    d.    The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e.    The right to confront and cross-examine witnesses against Defendant at trial;

    f.    The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

    g.    The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

    h.    The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of

Plea Agreement – 4
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.    **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.    **Statement of Facts.** The parties agree on the following representations. Defendant admits he is guilty of the charged offense:

a.    TK Mac Enterprises, Inc. ("TK Mac") purchased and sold wholesale cigarette and non-cigarette tobacco products. TK Mac was licensed by the Washington State Department of Revenue (WADOR) as a tobacco product distributor since September 2005. TK Mac also operated two retail locations, one in Federal Way, Washington ("TK Mac South") and the other in Lynnwood, Washington ("TK Mac North").

b.    Riverside Smoke Shop ("Riverside"), D&A Smoke Shop ("D&A"), and Valley Smoke Shop ("Valley") are owned by Chickie's Smoke Shop, Inc. ("Chickie's"), whose sole shareholder is K.P., and located on the Puyallup Indian Reservation (collectively the "Puyallup Tribal Smoke Shops"). From no later than 2012 through current day, ANTHONY EDWIN PAUL operated as the President of Chickie's

Plea Agreement – 5
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and oversaw the managers of the Puyallup Tribal Smoke Shops who ran the smoke shops day-to-day business operations.

c.    From no later than 2012 through at least April 26, 2017, Defendant Theodore Kai Silva operated as the general manager of Riverside. In that role, Silva was responsible for issuing checks to pay for the tobacco and other products purchased by the managers of the Puyallup Tribal Smoke Shops. Silva also had signature authority on the bank accounts of Riverside and D&A. Silva worked under, and took direction from, ANTHONY EDWIN PAUL.

d.    TK Mac was operated by Hyung Il Kwon and Tae Young Kim; ANTHONY EDWIN PAUL and Hyung Il Kwon developed and maintained a personal and business relationship over the course of which PAUL caused Chickie's to make several loans to TK Mac and affiliated businesses totaling over $400,000.

e.    Under Washington State law, tobacco excise taxes are "levied and collected" upon the sale, handling, or distribution of all tobacco products. Federally recognized Indian tribes and enrolled tribal members conducting business within the boundaries of an Indian reservation are exempt from state taxation for tobacco products. The Puyallup Tribal Smoke Shops fell within this exemption. Tobacco products purchased from these shops were untaxed. Non-tribal distributors, such as TK Mac, were required under state law to self-report purchases of untaxed tobacco products from tribal distributors and pay the corresponding excise tax on monthly Combined Excise Tax Returns (CETRs).

f.    Washington state law allows non-tribal distributors, such as TK Mac, to claim an excise tax credit on actual sales of previously taxed tobacco products to tribal entities. Credits can be used to offset the non-tribal distributor's overall excise tax liability. Credits for sales of previously taxed tobacco products to tribal entities are claimed on the non-tribal distributor's monthly CETRs.

g.    From no later than 2009 through at least April 26, 2017, TK Mac purchased significant quantities of tobacco products from the Puyallup Tribal Smoke Shops. Most of the purchases were cash transactions. TK Mac did not self-report its cash purchases of tobacco products from the Puyallup Tribal Smoke Shops and consequently did not pay the corresponding excise taxes owing on those purchases. The tobacco products purchased by TK Mac from the Puyallup Tribal Smoke Shops were subsequently sold by TK Mac through their two retail locations, generating cash proceeds.

h.    In approximately 2013, TK Mac began to pay for tobacco products purchased on credit from Puyallup Tribal Smoke Shops in cash generated from retail

Plea Agreement – 6
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

sales by TK Mac, including sales of untaxed contraband tobacco products. In addition to the bulk cash, TK Mac would deliver fraudulent invoices purporting to document sales of tobacco products to the Puyallup Tribal Smoke Shops to Silva. On one or two occasions in 2013, ANTHONY EDWIN PAUL expressly authorized Silva to issue negotiable checks payable to TK Mac in amounts equal to the tendered bulk cash and reflected on the fraudulent invoices. The purpose served by the fraudulent invoices was to document the sham transaction. The exchanges were done with ANTHONY EDWIN PAUL's knowledge and consent.

    i.  ANTHONY EDWIN PAUL acknowledges that the government is prepared to prove that he knew the fraudulent invoices were generated solely to create the false impression that TK Mac was selling tobacco products to the Puyallup Tribal Smoke Shops and generating fraudulent excise tax credits as a result of those purported sales. He further acknowledges that the government is prepared to prove that he knew TK Mac was delivering large amounts of bulk cash to the Puyallup Tribal Smoke shop in exchange for the negotiable checks issued by Silva.

    j.  The cash-for-check exchanges occurred between representatives of TK Mac and Silva once or twice a month. The exchanges continued unabated for approximately four years before ending in early 2017 after TK Mac's business locations were searched by federal law enforcement officers.  These exchanges were not done for a legitimate business purpose. ANTHONY EDWIN PAUL took no steps to intervene and stop the sham transactions. At some point during this time period, ANTHONY PAUL SILVA suspected it was particularly likely that the exchanges were part of an illegal money laundering operation. He deliberately avoided learning the true purpose of the exchanges despite being presented with circumstances that would lead a reasonable person to conclude he was participating in a money laundering scheme.

   The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

   9.  **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

    a.  The base offense level is 7 (USSG §§2X1.1(a), 2S1.1 and 2B1.1(a)(1));

Plea Agreement – 7
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

b.      An undermined increase dependent on the Court's determination of the loss amount resulting from the offense. The parties will present arguments at sentencing regarding the appropriate loss amount (USSG §2B1.1(b)(1); and

c.      A 2-level increase because Defendant was convicted under 18 U.S.C. § 1956 (USSG §2S1.1(b)(2)(B).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10.      **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by 3 levels pursuant to USSG § 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11.      **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend a term of imprisonment that is no higher than the low end of defendant's sentencing range under the Sentencing Guidelines. Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that he cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

Plea Agreement – 8
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

12.    **Restitution.** Defendant shall make restitution to the Washington State Department of Revenue in an amount to be determined by the Court. The amount to be determined represents losses incurred by the Washington State Department of Revenue resulting from the creation and application of false excise tax credits fraudulently generated through the agreed cash-for-check scheme. This restitution obligation shall be joint and several with Hyung Il Kwon's and Tae Young Kim's obligation for the same losses. Kwon and Kim have been identified as the Defendant's co-conspirators and were convicted in separate but related cases.[1] Said amount shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.  In exchange for the promises by the United States contained in this plea agreement, Defendant agrees that he will be responsible for any order requiring payment of restitution for such losses.

a.    The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds the Defendant is unable to make immediate restitution.

b.    Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial

---

[1] *United States v. Hyung Il Kwon*, CR19-083JLR; *United States v. Tae Young Kim*, CR19-004JLR.

Plea Agreement – 9
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

obligations to be imposed in connection with this prosecution.  Defendant's cooperation

obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea

Agreement, truthfully and completely executing a Financial Disclosure Statement

provided by the United States Attorney's Office and signed under penalty of perjury

regarding Defendant's and Defendant spouse's financial circumstances and producing

supporting documentation, including  tax returns, as requested; (2) providing updates

with any material changes in circumstances, as described in 18 U.S.C. §  3664(k), within

seven days of the event giving rise to the changed circumstances; (3) authorizing the

United States Attorney's Office to obtain Defendant's credit report before sentencing; (4)

providing waivers, consents or releases requested by the U.S. Attorney's Office to access

records to verify the financial information; (5) authorizing the U.S. Attorney's Office to

inspect and copy all financial documents and information held by the U.S. Probation

Office; and (7) notifying the United States Attorney's Office before transferring any

interest in property owned directly or indirectly by Defendant, including any interest held

or owned in any other name, including all forms of business entities and trusts.

c.      The parties acknowledge that voluntary payment of restitution prior

to the adjudication of guilt is a factor the Court considers in determining whether

Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

13.    **Forfeiture of Assets.** Defendant understands that the forfeiture of property

is part of the sentence that must be imposed in this case. Defendant agrees to forfeit to the

United States immediately his right, title, and interest in all property that constitutes

proceeds of his commission of Conspiracy to Commit Money Laundering. All such

property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1).

Defendant agrees to fully assist the United States in the forfeiture of this property

and to take whatever steps are necessary to pass clear title to the United States, including

but not limited to: surrendering title and executing any documents necessary to effect

forfeiture; assisting in bringing any property located outside the United States within the

jurisdiction of the United States; and taking whatever steps are necessary to ensure that

Plea Agreement – 10
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant also agrees not to file a claim to this property in any federal forfeiture proceeding, administrative or judicial, that may be or has been initiated, or to otherwise contest any federal forfeiture proceeding that may be or has been initiated. Finally, Defendant agrees he will not assist any party who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which Defendant has any interest or control if that property constitutes proceeds of his commission of Conspiracy to Commit Money Laundering.

14.     **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

15.     **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

Plea Agreement – 11
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119
2   (1997).

3          16.    **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if
4   Defendant breaches this Plea Agreement, the United States may withdraw from this Plea
5   Agreement and Defendant may be prosecuted for all offenses for which the United States
6   has evidence. Defendant agrees not to oppose any steps taken by the United States to
7   nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea
8   Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement,
9   Defendant has waived any objection to the re-institution of any charges that previously
10  were dismissed or any additional charges that had not been prosecuted.

11         Defendant further understands that if, after the date of this Agreement, Defendant
12  should engage in illegal conduct, or conduct that violates any conditions of release or the
13  conditions of confinement (examples of which include, but are not limited to, obstruction
14  of justice, failure to appear for a court proceeding, criminal conduct while pending
15  sentencing, and false statements to law enforcement agents, the Pretrial Services Officer,
16  Probation Officer, or Court), the United States is free under this Plea Agreement to file
17  additional charges against Defendant or to seek a sentence that takes such conduct into
18  consideration by requesting the Court to apply additional adjustments or enhancements in
19  its Sentencing Guidelines calculations in order to increase the applicable advisory
20  Guidelines range, and/or by seeking an upward departure or variance from the calculated
21  advisory Guidelines range. Under these circumstances, the United States is free to seek
22  such adjustments, enhancements, departures, and/or variances even if otherwise
23  precluded by the terms of the Plea Agreement.

24         17.    **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant
25  acknowledges that, by entering the guilty plea required by this plea agreement, Defendant
26  waives all rights to appeal from Defendant's conviction and any pretrial rulings of the
27  Court. Defendant further agrees that, provided the Court imposes a custodial sentence
28  that is within or below the Sentencing Guidelines range (or the statutory mandatory

Plea Agreement – 12
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

      a.    Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

      b.    Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

18.    **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

19.    **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

Plea Agreement – 13
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

20.     **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 22 day of June 2021.


_____
ANTHONY EDWIN PAUL
Defendant


_____
DAVID H. SMITH
Attorney for Defendant


_____
JAMES D. OESTERLE
Assistant United States Attorney


_____
JONAS LERMAN
Assistant United States Attorney

Plea Agreement – 14
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

1    **20.    Completeness of Agreement.** The United States and Defendant
2  acknowledge that these terms constitute the entire Plea Agreement between the parties,
3  except as may be set forth on the record at the change of plea hearing in this matter. This
4  Agreement binds only the United States Attorney's Office for the Western District of
5  Washington. It does not bind any other United States Attorney's Office or any other
6  office or agency of the United States, or any state or local prosecutor.
7         Dated this 22ⁿᵈ day of June 2021.

8

9

10                                              _____
                                                ANTHONY EDWIN PAUL
11                                              Defendant

12

13                                              DAVID H. SMITH
                                                Attorney for Defendant
14

15

16                                              JAMES D. OESTERLE
17                                              Assistant United States Attorney

18

19                                              _____ for
                                                JONAS LERMAN
20                                              Assistant United States Attorney

21

22

23

24

25

26

27

28

Plea Agreement – 14
*U.S. v. Anthony Edwin Paul*, CR19-194-01JLR

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800